UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HUGO VALVERDE-RUMBO,<br><br>Defendant. | Case No.  5:14-cr-00620-RMW<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Defendant Hugo Valverde-Rumbo has been indicted for being an alien found in the United States following deportation in violation of 8 U.S.C. § 1326(d). He seeks to dismiss the indictment on the basis that his underlying deportations were unlawful because at his first removal proceedings he did not voluntarily, knowingly and intentionally waive his right to a deportation hearing and to be represented by counsel and was not advised of either his potential eligibility for pre-conclusion voluntary departure or for a U Visa.

The court held an evidentiary hearing on defendant's motion on October 5, 2015. The court hereby denies the motion.

**I.   VALVERDE-RUMBO'S PRIOR REMOVALS**

Valverde-Rumbo was removed following deportation proceedings on October 6, 2006 and again on August 27, 2008 when his deportation was reinstated. The Government contends that Valverde-Rumbo stipulated in writing to his 2006 removal in compliance with 8 C.F.R.

1 § 1003.25(b) which provides:

> An Immigration Judge may enter an order of deportation, exclusion or removal stipulated to by the alien (or the alien's representative) and the Service. The Immigration Judge may enter such an order without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any. If the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing, and intelligent.

In the instant case, after review of: (1) the Notice to Appear ("NTA") served on defendant requiring him to show cause why he should not be removed; and (2) the executed written stipulation pursuant to 8 C.F.R. § 1003.25, including the waivers therein, the Immigration Judge found that defendant had voluntarily, knowingly and intelligently waived his rights and ordered that he be removed to Mexico. Valverde-Rumbo contends that he did not voluntarily, knowingly and intelligently waive his rights and was not advised that he was plausibly entitled to pre-conclusion voluntary departure or a U Visa. He contends that his due process rights were thereby violated.

## II.   CIRCUMSTANCES SURROUNDING DEFENDANTS' SIGNING OF STIPULATED WAIVER OF RIGHTS

After Valverde-Rumbo was arrested, he was placed in a cell at the Immigration Customs Enforcement office with other detainees. Valverde-Rumbo says that when it was his turn to talk with the immigration officer, he was taken with two other detainees into the non-private hallway outside his cell and asked what he wanted to do about his immigration case. Valverde-Rumbo claims that the officer did not ask many questions. "[H]e just kept urging me to sign my deportation." Dkt. No. 26-8 at p. 3. Valverde-Rumbo claims that the immigration officer told him that if wanted to fight his case, he would spend a year in jail. He also asserts that the immigration officer did not advise him of any form of relief that might be available to him or possible ways of remaining in the United States. Valverde-Rumbo felt that he had no choice but to sign. He submits that he did not voluntarily, knowingly, and intelligently waive his rights.

The defendant did sign, however, a stipulation that contained all the advice required by 8 C.F.R. § 1003.16(b) including "[a] statement that the alien understands the consequences of the

stipulated request and that the alien enters the request voluntarily, knowingly, and intelligently." *Id.* The stipulation was written in both English and Spanish – defendant's primary language is English – and reflected, among other things, that he had received a list of free legal service providers and been advised of his right to be represented by an attorney of his choice.

The Government's original response to Valverde-Rumbo's motion included a declaration from the immigration officer who processed Valverde-Rumbo's case but the Government subsequently withdrew the declaration and requested that the court not rely on it for any purpose.

The Immigration Judge waived the parties' presence at a removal hearing and found, as required in cases involving unrepresented aliens, that Valverde-Rumbo's stipulation and waivers therein were made voluntarily, knowingly, and intelligently. He based his finding on review of the NTA served on Valverde-Rumbo requiring him to show cause why he should not be removed and the stipulated waiver. The Immigration Judge did not personally meet with Valverde-Rumbo.[1]

Although Valverde-Rumbo's declaration and testimony reveal that he has lived in the United States for the majority of his life, went to school in the United States, and graduated from high school in San Jose, California, it was apparent from his testimony that he has difficulty reading and understanding complex matter and would not have understood the significance and meaning of the waivers in the stipulation without a thorough and simplified explanation. His testimony was credible that the immigration officer was focused on getting him to agree to deportation.

### III. VALVERDE-RUMBO'S CRIMINAL CONDUCT

In 2004, Valverde-Rumbo was convicted of rape by violence in violation of California Penal Code Section 220 and unlawful sexual intercourse with a minor more than three years younger than defendant in violation of California Penal Code Section 261.5. Both crimes are

---

[1] 8 C.F.R. § 1003.25(b) does require that "[i]f the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing and intelligent." This could be read as requiring that an unrepresented alien personally appear before the Immigration Judge for a determination as to whether the alien has waived his rights. *See United States v. Gomez*, 757 F.3d 885, 898 (2014).

3
5:14-cr-00620-RMW
ORDER DENYING MOTION TO DISMISS

aggravated felonies. As of October 2006, he had illegally entered the United States on at least two occasions and failed to register as a sex offender.

## IV.     ASSAULT ON VALVERDE-RUMBO'S FAMILY

When he was 13 years old, gang members entered Valverde-Rumbo's family home in San Jose, California and assaulted members of his family. This assault was verified by the testimony of two family members. Valverde-Rumbo asserts that he has experienced difficulty sleeping since the assault because of fear that a similar incident might occur. No evidence suggests that he received any mental health care or counseling or missed any school following the incident. It is unclear as to the extent of assistance his parents gave to the police with respect to this crime.

## V.     ANALYSIS OF CLAIMS

### A.     The Government Has Failed to Establish Waiver by Clear and Convincing Evidence

Valverde-Rumbo's motion to dismiss depends on whether the underlying removal order by which Valverde-Rumbo was removed on October 6, 2006 was fundamentally unfair. Two questions must be answered: (1) did defendant voluntarily, knowingly, and intelligently waive his rights in connection with the 2006 removal proceedings, and (2) if he did not, was he prejudiced thereby? *See United States v. Gomez*, 757 F.3d 885, 892 (9th Cir. 2014). The government has the burden of proving by clear and convincing evidence the validity of the waiver of rights including the right to counsel. *United States v. Pallares-Gallan*, 359 F.3d 1088, 1097 (9th Cir. 2008). The court must indulge every reasonable presumption against waiver that would result in a loss of fundamental rights. *United States v. Ramos*, 623 F.3d 672, 680 (2010). The defendant has the burden of proving prejudice resulting from an invalid waiver. *Id.* at 1103. However, "where the government introduces official records which on their face show a valid waiver of rights in connection with a deportation proceeding, the burden shifts to the defendant to come forward with evidence tending to prove the waiver was invalid." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012) (quoting *United States v. Galicia–Gonzalez,* 997 F.2d 602, 604 (9th Cir. 1993) (affirming waiver where the defendant failed to even suggest that "his rights were

improperly explained or that he was coerced into waiving them")).

In the instant case, the government has introduced records that, on their face, show a valid waiver of rights and, thereby, make a *prima facie* showing of a valid waiver. However, the evidence presented by Valverde-Rumbo rebuts the Government's *prima facie* showing placing the burden of proof back on the Government to show a voluntary, knowing and intelligent waiver.

The Immigration Judge relied upon the NTA and signed stipulation to find that Valverde-Rumbo waived his rights. As set forth above, 8 C.F.R. § 1003.25 provides that if the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is a voluntary, knowing, and intelligent waiver. This provision may not require that the alien personally appear before the Immigration Judge, but it at least requires additional evidence beyond a signed stipulation purportedly waiving rights. *See Gomez*, 757 F.3d at 898.[2] Here, the defendant claims he was pressured to sign the stipulation, was interviewed in a group setting, and was threatened with ongoing custody unless he signed the stipulation. Although the defendant spoke English and was a high school graduate, his testimony at the hearing on his current motion suggests that he has limited ability to read and understand. These limitations would presumably have been more severe in 2006 than currently. Defendant denies that his options were explained beyond the threat of further incarceration if he fought his deportation. It appears doubtful that the immigration officer reviewed with defendant each allegation and charge in the manner the official papers reflect and in a way to insure understanding.

The instant case is strikingly similar to *Gomez* and *Ramos,* both of which held that the alien's waivers, reflected in stipulations, were invalid. The cases suggest that something more is needed to support a waiver when the alien is unrepresented. The better practice would be for the

---

[2] Such additional evidence could be a showing that the unrepresented alien actually appeared before an Immigration Judge who then assured him or herself that defendant was making a knowing, voluntary and intelligent waiver. An alternative could be to present testimony from an immigration officer as to how he or she insured that a alien's waiver was knowing, voluntary and intelligent or, if the immigration officer did not recall the alien specifically, the immigration officer could describe the procedure he or she followed to make sure that waivers were knowing, voluntary and intelligent.

5
5:14-cr-00620-RMW
ORDER DENYING MOTION TO DISMISS

Immigration Judge to meet with the alien and satisfy him or herself that any waiver was valid. This would avoid the problem that may occur if the Immigration Judge relies on someone else's determination of whether the alien acted knowingly, voluntarily and intelligently.

The government argues that the defendant's reliance on *Ramos* and *Gomez* is misplaced because those cases focused on language deficiencies. While both *Gomez* and *Ramos* did deal with individuals who were given forms in English when they both spoke only Spanish, the court also discussed the need to insure that the alien's waiver was knowing and voluntary. *Ramos*, 623 F.3d at 682 (noting the difficulty of understanding immigration laws); *Gomez*, 796 F.3d at 896-98 (suggesting that something more than a written stipulation is required before an Immigration Judge can find a waiver knowing and voluntary).

Although a close case, the court concludes that the Government has not shown by clear and convincing evidence that Valverde-Rumbo's waiver of his right to a hearing and to be represented by counsel were knowing, voluntary and intelligent.

### B. Valverde-Rumbo Fails to Establish Prejudice

In addition to the defect in the underlying deportation proceedings, Valverde-Rumbo must show that he was prejudiced by that defect in order to successfully collaterally attack his prior unlawful entry conviction. The defendant asserts that he was prejudiced in two ways: (1) he was not advised of his eligibility for pre-conclusion voluntary departure; and (2) he was not informed that he was plausibly entitled to a U Visa.

#### 1. Prior Aggravated Felony Convictions Preclude Voluntary Departure

Defendant had been convicted of two aggravated felonies at the time of his first deportation. In order to be eligible for pre-conclusion voluntary departure, an immigrant must not have been convicted of an aggravated felony. 8 U.S.C. § 1229(c)(a). Since defendant was not eligible for pre-conclusion voluntary departure, he was not prejudiced by not being informed about it.

#### 2. Defendant Not Entitled to U Visa

Defendant submits that he had a plausible claim of eligibility for a U Visa at the time of his

6

deportation because he and his family had been victims of an assault by gang members when he was 13 years old. An alien may be entitled to a U Visa in the discretion of an immigration officer if certain requirements are met. In Valverde-Rumbo's case, however, there was nothing in Valverde-Rumbo's alien file that would have suggested to an immigration officer that Valverde-Rumbo might be eligible. An immigration officer or judge can be expected to advise an alien of a possibility for relief from deportation only where the record contains an inference that the alien is eligible. *See Moran–Enriquez v. INS,* 884 F.2d 420, 422–23 (9th Cir.1989 ("IJs are not expected to be clairvoyant"); *United States v. Resuleo-Flores*, 2012 WL 762701 at 85 (N.D. Cal. Mar. 7, 2012). Since it does not appear that there was anything in Valverde-Rumbo's record that should have caused an immigration official to infer that defendant might be eligible for a U Visa, there appears to have been no due process violation from failing to advise about the requirements for a U Visa.

Even if defendant had applied for a U Visa, it does not appear that he would have had a plausible chance of receiving one. Michaelyn Potter, an experienced supervising immigration officer, testified that in 2006, a conviction for a violent felony made one ineligible for a U Visa. She also testified that although starting in 2007, a conviction for an aggravated felony was no longer automatically disqualifying, she has not heard of a U Visa being issued to an individual who has been convicted of rape by force.

Further, to qualify, the alien must have suffered substantial physical or mental abuse because of being a victim, and he or his parents must have been helpful in the investigation or prosecution of the perpetrators. 8 C.F.R. § 214.14 (b) (l)-(3). Valverde-Rumbo bears the burden of proving each criterion. 8 C.F.R. § 214.14(c)(4). He has not established that he suffered substantial mental abuse as a result of the assault or that a law enforcement agency has or would certify that his parents provided assistance in apprehending the perpetrators.

## VI.   ORDER

The court concludes that although the Government has not shown by clear and convincing evidence that Valverde-Rumbo's waiver of his right to a hearing and to be represented by counsel

was knowing, intelligent and voluntary, Valverde-Rumbo has not met his burden to show prejudice. Therefore, his motion to dismiss is denied.

Dated: October 28, 2015



Ronald M. Whyte
United States District Judge