# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-cr-00620-BLF-1 |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL; TERMINATING DEFENDANT'S MOTION FOR LEAVE TO CONDUCT DISCOVERY; AND DENYING DEFENDANT'S REQUEST FOR LEAVE TO FILE REQUEST FOR JUDICIAL NOTICE** |
| v. | |
| HUGO VALVERDE-RUMBO, | |
| Defendant. | |
| | [Re: ECF 98, 107, 118] |

Defendant Hugo Valverde-Rumbo, a native and citizen of Mexico, is serving a twenty-four month prison term following his conviction of illegal reentry into the United States in violation of 8 U.S.C. § 1326. His appeal of that conviction is pending in the United States Court of Appeals for the Ninth Circuit.

Defendant has filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. Because this Court lacks jurisdiction to grant the motion for a new trial in light of the pending appeal, Defendant seeks an indicative ruling under Federal Rule of Criminal Procedure 37, specifically, a statement that the Court would grant a new trial if the case were remanded or that the motion for a new trial raises a substantial issue. Defendant also has filed a motion for leave to conduct discovery, seeking an indicative ruling that the Court would permit further discovery if the case were remanded or that the motion for leave to conduct discovery raises a substantial issue. After briefing was completed and oral argument was heard on the motions, Defendant filed a request for leave to file a request for judicial notice.

For the reasons discussed below, the motion for a new trial is DENIED, the motion for leave to conduct discovery is TERMINATED, and the request for leave to file a request for judicial notice is DENIED.[1]

## I. BACKGROUND

Defendant was born in Mexico in October 1984 and he entered the United States without inspection as a young child. Gov't Exh. 2, Norris Decl. ¶ 13 & Exh. 2-4, ECF 109-1. He has a significant history of criminal convictions and immigration proceedings, summarized as follows.

### September 2004 Convictions

In September 2004, when Defendant was nineteen years old, he sexually assaulted his fifteen-year-old girlfriend. Norris Decl. ¶¶ 4-5 & Exh. 2-1, 2-2. The victim reported to the police that when she told Defendant she wanted to end their relationship, Defendant slapped her, tore her clothes, pushed her down, and forcibly raped her. Supplemental Police Report, ECF 70-1. Defendant was convicted of assault with intent to commit rape in violation of California Penal Code § 220, and unlawful intercourse with a minor more than three years younger in violation of California Penal Code § 261.5(c). Norris Decl. ¶¶ 4-5 & Exh. 2-1, 2-2. He was sentenced to a one-year term of imprisonment and a three-year term of probation, and he was required to register as a convicted sex offender. *Id.*

### October 2006 Removal

In February 2006, Defendant's 2004 convictions came to the attention of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Gov't Exh. 2, Norris Decl. ¶ 6 & Exh. 2-3, ECF 109-1. The matter was referred to ICE's San Jose Domestic Violence/Sexual Offender Unit, which "identifies aliens who are sexual offender registrants within

---

[1] Defendant requests leave to request judicial notice of the diagnostic criteria for Post-Traumatic Stress Disorder ("PTSD") in the Diagnostic and Statistical Manual of Mental Disorders IV-Text Revision, Washington D.C., American Psychiatric Association (4th ed. rev. 2000) ("DSM-IV-TR"). Request for Leave to File Request for Judicial Notice, ECF 118. While the Court could take judicial notice of the existence of the diagnostic criteria for PTSD, *see* Fed. R. Evid. 201, those criteria prove nothing absent expert opinion applying them. The Court certainly cannot apply the criteria to draw any conclusion regarding Defendant's mental state, as the undersigned is not trained in psychiatry and has not personally evaluated Defendant. Surely Defendant does not urge the Court to engage in armchair psychology. Defendant's request for leave to request judicial notice is DENIED.

the State of California convicted of aggravated felonies, child sex, sexual deviancy and domestic violence offences [sic]." Norris Decl. ¶ 7 & Exh. 2-4. ICE prepared a Record of Deportable/Inadmissible Alien (Form I-213), stating that Defendant had been convicted of an aggravated felony and was eligible for expedited removal from the United States. *Id.* ¶¶ 7-8 & Exh. 2-4. On October 4, 2016, ICE served Defendant with a Notice to Appear, which listed Defendant's 2004 convictions and stated that Defendant was subject to removal because he was unlawfully present in the United States and he had been convicted of "acts which constitute the essential elements of a crime involving moral turpitude." Gov't Exh. 1, Notice to Appear, ECF 109-1. Defendant was provided with and signed a Stipulated Request for Removal Order and Waiver of Hearing. Gov't Exh. 3, Stipulated Request, ECF 109-1. The stipulated request expressly waived Defendant's rights to representation by counsel and a hearing before an Immigration Judge; stated that Defendant did not wish to apply for any relief from removal; agreed to issuance of a written order of removal; and designated Mexico as the country of removal. *Id.* On October 6, 2006, an Immigration Judge issued a removal order directing that Defendant be removed to Mexico. Norris Decl. ¶ 9 & Exh. 2-5. Defendant was removed on October 12, 2006. Norris Decl. ¶ 11.

**August 2008 Removal**

Defendant was found in the United States again in 2008; he was removed in August 2008 through a reinstatement of the 2006 removal order. Norris Decl. ¶ 11.

**October 2014 Arrest and Subsequent Convictions**

In October 2014, Defendant was the subject of a traffic stop by the San Jose Police Department. Norris Decl. ¶ 13. Defendant gave the officers a false name and false birthdate. *Id.* He also told investigating officers that he had not registered as a sex offender at his current address in San Jose. *Id.* Defendant subsequently was charged with and pled guilty to failure to register as a sex offender in violation of California Penal Code § 290(b), and providing false information to a police officer in violation of California Penal Code § 148.9. Joint Stipulations and Waivers for Bench Trial, ECF 64-1.

**December 2014 Indictment Charging Illegal Reentry**

Defendant came to the attention of ICE following his October 2014 arrest. Gov't Exh. 2, Norris Decl. ¶ 14. The United States Attorney's Office commenced the present case by filing a criminal complaint charging Defendant with illegal reentry. Norris Decl. ¶ 14 & Exh. 2-7. On December 10, 2014, a grand jury returned a single-count indictment charging Defendant with illegal reentry in violation of 8 U.S.C. § 1326. Indictment, ECF 4.

**Denial of Defendant's Motion to Dismiss Indictment**

Defendant moved to dismiss the indictment on the ground that his underlying 2006 and 2008 removals were unlawful and thus could not establish the predicate to the offense of illegal reentry. Motion to Dismiss Indictment, ECF 26. Because the 2008 removal was pursuant to reinstatement of the 2006 order, only the validity of the 2006 order was at issue in Defendant's motion. *See United States v. Arias-Ordonez*, 597 F.3d 972, 982 (9th Cir. 2010) (a valid reinstatement of an invalid removal order is insufficient to support a conviction for illegal reentry).

Defendant argued that he was deprived of due process in his 2006 immigration proceedings because he did not voluntarily, knowingly, and intentionally waive his rights to representation by counsel and a hearing before an Immigration Judge, and he was not advised of his potential eligibility for pre-conclusion voluntary departure or a U Visa. Motion to Dismiss Indictment, ECF 26. On September 3, 2015, Judge Ronald M. Whyte (ret.), the district judge to whom the case was assigned, issued a written order addressing Defendant's motion to dismiss. September 2015 Order at 4, ECF 39. Judge Whyte stated that resolution of the motion required a determination whether the 2006 removal proceedings were "fundamentally unfair," and that in order to make that determination he had to answer two questions: "(1) did defendant voluntarily, knowingly, and intelligently waive his rights in connection with the 2006 removal proceedings, and (2) if he did not, was he prejudiced thereby?" *Id.* Judge Whyte determined that an evidentiary hearing was necessary to answer those questions. *Id.* at 7.

Judge Whyte held an evidentiary hearing on October 5, 2015 and he issued a written order denying Defendant's motion to dismiss the indictment on October 28, 2015. Order Denying Motion to Dismiss, ECF 53. On the issue of Defendant's waiver of his rights in the 2006 removal

4

proceedings, Judge Whyte held that the Government had the burden of proving waiver by clear and convincing evidence and that the Government had not carried its burden. *Id.* at 4-6. Defendant's motion to dismiss the indictment thus turned on whether Defendant suffered prejudice from the defect in the immigration proceedings. *Id.* at 6. Judge Whyte held that Defendant had the burden of establishing prejudice resulting from an invalid waiver of his rights. *Id.* at 4.

Defendant asserted that he was prejudiced in two ways, first by immigration officials' failure to inform him of his potential eligibility for pre-conclusion voluntary departure and second by their failure to inform him of his potential eligibility for a U Visa. *Id.* at 6. Judge Whyte concluded that Defendant could not establish prejudice arising from immigration officials' failure to inform him about pre-conclusion voluntary departure because he was ineligible for such relief as a result of his prior convictions of aggravated felonies. *Id.* As a result, in order to obtain dismissal of the indictment, Defendant had to demonstrate prejudice resulting from immigration officials' failure to inform him of his potential eligibility for a U Visa. *Id.* at 6-7. For reasons discussed more fully below, Judge Whyte concluded that Defendant had not carried his burden because he had not shown that he had a plausible claim for a U Visa at the time of his 2006 immigration proceedings.[2] *Id.* at 7. On that basis, Judge Whyte denied Defendant's motion to dismiss the indictment. *Id.* at 7-8.

**Conviction of Illegal Reentry Following Bench Trial**

Following denial of his motion to dismiss the indictment, Defendant waived his right to a jury trial and the parties agreed to a bench trial before Judge Whyte on stipulated facts. Joint Stipulations and Waivers for Bench Trial, ECF 64-1. Judge Whyte held a bench trial on January

---

[2] Although Judge Whyte's order discusses Defendant's eligibility for a U Visa in 2006, applications for U Visas actually could not be processed at that time because the regulations governing U Visas were not promulgated until 2007. The DHS instead was authorized to grant interim relief such as deferred action or stay of removal to aliens who established *prima facie* eligibility for a U Visa in 2006. *Lee v. Holder*, 599 F.3d 973, 974 (9th Cir. 2010); *Catholic Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 873 (N.D. Cal. 2008). This discrepancy is insignificant, as the showing required to establish eligibility for interim relief was the same as the showing required to establish *prima facie* eligibility for a U Visa – evidentiary proof addressing the four criteria listed in 8 U.S.C. § 1101(a)(15) (U)(i)(I)-(IV). *See Catholic Charities CYO*, 622 F. Supp. 2d at 873.

4, 2016 and found Defendant guilty of illegal reentry. Criminal Minutes, ECF 65. On April 11, 2016, Judge Whyte sentenced Defendant to a twenty-four-month term of imprisonment and a three-year term of supervised release. Criminal Minutes, ECF 71. Judgment was entered on April 12, 2016. Defendant currently is serving the term of imprisonment imposed by Judge Whyte; his anticipated release date is September 23, 2017.

Defendant filed a timely notice of appeal on April 25, 2016, which is pending in the Court of Appeals for the Ninth Circuit. Notice of Appeal, ECF 75. Defendant has requested and obtained several extensions of time to file his opening brief on appeal, which currently is due on October 10, 2017.

**Current Motions**

On April 19, 2017, Defendant filed the present motion for a new trial. Motion for New Trial, ECF 98. Because Judge Whyte has retired, the case was randomly reassigned pursuant to the Court's assignment plan. *See* Order Directing Clerk to Reassign Case, ECF 99. The case was assigned to the undersigned judge on April 25, 2017. This Court thereafter twice extended the briefing schedule on the motion for a new trial at the request of one or both of the parties. *See* Orders, ECF 103, 106.

Prior to completion of briefing on the motion for a new trial, Defendant filed a motion for leave to conduct discovery. Motion for Leave to Conduct Discovery, ECF 107. After completion of briefing, the Court set both motions for hearing on August 1, 2017. Minutes, ECF 117. At the hearing, counsel for Defendant stated that the motion for leave to conduct discovery need not be considered by the Court unless and until the Court of Appeals remands the case. Accordingly, that motion is TERMINATED without prejudice to renewal in the event the case is remanded.

## II.     MOTION FOR NEW TRIAL

In his motion for a new trial, Defendant asserts that new evidence has come to light showing that, contrary to Judge Whyte's finding in denying his motion to dismiss the indictment, Defendant had a plausible claim for a U Visa in 2006 and therefore was prejudiced by immigration officials' failure to inform him of his potential eligibility for a U Visa. Defendant asks the Court to issue an indicative ruling stating either that it would grant a new trial if the Court of Appeals

1   were to remand for that purpose, or that the motion for a new trial raises a substantial issue which

2   may warrant remand.

3         **A.      Jurisdiction to Consider Defendant's Motion for New Trial**

4        Defendant brings his motion for a new trial under Federal Rule of Criminal Procedure 33,

5   which provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant

6   a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). If the defendant was

7   convicted following a bench trial, the court may take additional testimony and enter a new

8   judgment. *Id.* A motion for a new trial based on newly discovered evidence must be filed within

9   three years after the finding of guilty. Fed. R. Crim. P. 33(b)(1). "If an appeal is pending, the

10   court may not grant a motion for a new trial until the appellate court remands the case." *Id.*

11        As noted above, Defendant's appeal of his conviction is pending. This Court thus lacks

12   jurisdiction to grant a motion for new trial at this time. For that reason, Defendant asks this Court

13   to issue an indicative ruling on his motion for a new trial. "If a timely motion is made for relief

14   that the court lacks authority to grant because of an appeal that has been docketed and is pending,

15   the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it

16   would grant the motion if the court of appeals remands for that purpose or that the motion raises a

17   substantial issue." Fed. R. Crim. P. 37(a). If the district court issues an indicative ruling stating

18   that it would grant the motion upon remand, or that the motion raises a substantial issue, "the

19   movant must promptly notify the circuit clerk" and "the court of appeals may remand for further

20   proceedings." Fed. R. App. P. 12.1.

21        The Government asserts that Defendant's motion for a new trial is procedurally improper,

22   because Defendant seeks to revisit issues addressed in his pretrial motion to dismiss the indictment

23   rather than the trial itself. According to the Government, "the validity of the underlying

24   deportation . . . is not a factual element to be proven at trial" but rather "a *legal issue* properly

25   raised in pretrial litigation." Gov't Opp. at 4, ECF 108. The Government therefore takes the

26   position that the Court should not address the merits of Defendant's motion for a new trial.

27        The Court concludes that it properly may consider Defendant's motion for a new trial on

28   the merits. "For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the

Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted). A collateral attack on the underlying removal order does not raise purely legal issues, as evidenced by Judge Whyte's order denying Defendant's motion to dismiss the indictment. Among other things, Judge Whyte was required to and did make factual findings as to whether Defendant voluntarily, knowingly, and intelligently waived his rights in connection with the 2006 removal proceedings and whether Defendant had a plausible claim of eligibility for a U Visa at the time of his 2006 removal. *See* Order Denying Motion to Dismiss, ECF 53. Judge Whyte held an evidentiary hearing at which testimony was presented by several witnesses before he made those findings. *See id.*; Gov't Exh. 5, Evid. Hrg. Tr., ECF 109-2. Because Judge Whyte made factual findings regarding a predicate element of the charged offense, Rule 33 appears to be an appropriate mechanism for presenting new evidence. The Government has not cited any contrary authority which addresses circumstances such as those presented in this case.

The Government argues that direct appeal is the only means by which Defendant may challenge Judge Whyte's ruling on the motion to dismiss. However, Defendant seeks to present new evidence which he contends likely would result in acquittal were Judge Whyte's ruling revisited. As the Government acknowledges, that evidence cannot be presented in the context of Defendant's direct appeal, because "[d]ocuments or facts not presented to the district court are not part of the record on appeal." *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990). The Government appears to contend that there is no mechanism by which Defendant can present new evidence challenging the validity of his underlying removal. Absent some authority directly on point, this Court finds the Government's position unpersuasive. The Court therefore turns to the standard applicable to Defendant's motion for a new trial.

**B.** **Legal Standard re Motion for New Trial based on Newly Discovered Evidence**

"To prevail on a Rule 33 motion for a new trial based on newly discovered evidence, a

defendant must satisfy a five-part test: (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (internal quotation marks and citation omitted). The appellate court "review[s] a district court's order denying a motion for a new trial made on the ground of newly discovered evidence for abuse of discretion." *United States v. Brugnara*, 856 F.3d 1198, 1206 (9th Cir. 2017) (internal quotation marks and citation omitted). A motion for a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984) (internal quotation marks and citation omitted).

### C. Judge Whyte's Denial of Defendant's Motion to Dismiss the Indictment

As discussed above, Defendant moved to dismiss the indictment based on his contentions that he was deprived of due process in his 2006 immigration proceedings and was prejudiced thereby. As relevant here, he asserted that he was prejudiced because he had a plausible claim for a U Visa but did not know to apply for one as a result of the due process violation.

"[A]n undocumented alien attacking an administrative removal order may argue that a due process violation that occurred during her removal proceedings was prejudicial if (a) she identifies a form of relief for which she was eligible to apply, notwithstanding her aggravated felony conviction, and (b) she establishes that it was 'plausible' that, but for the due process violation, she would have been permitted to apply for, and would have obtained, such relief." *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 761 (9th Cir. 2015). In order to establish plausibility, an undocumented alien need not show that relief was "probable," but he or she must establish that it was more than merely "possible." *Id.* Moreover, the alien "must show that, but for the due process violation, it is both 'plausible' that she would have been permitted to apply for a U-visa . . . and 'plausible' that she would have obtained one had she applied." *Id.*

Although the briefing on Defendant's motion to dismiss and Judge Whyte's ultimate order denying the motion discuss Defendant's eligibility for a U Visa in 2006, an application for a U

United States District Court
Northern District of California

Visa actually could not have been processed in 2006. Congress created the 'U' nonimmigrant classification – the U Visa – for certain victims of criminal activity with the enactment of the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"). *Lee v. Holder*, 599 F.3d 973, 974 (9th Cir. 2010). When it enacted the VTVPA, Congress did not set a deadline for promulgation of implementing regulations, and the DHS did not issue such regulations until September 2007. *Id.* n.1; *Catholic Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 872 (N.D. Cal. 2008). Until that time, the DHS operated from interim guidance issued in the form of memoranda. *Catholic Charities CYO*, 622 F. Supp. 2d at 872. That guidance permitted the DHS to grant interim relief such as deferred action or stay of removal to aliens who established prima facie eligibility for a U Visa. *Lee*, 599 F.3d at 974; *Catholic Charities CYO*, 622 F. Supp. 2d at 873. The purpose of such interim relief was to ensure that aliens were not removed from the United States before the DHS could determine whether they were eligible for U Visas. *Catholic Charities CYO*, 622 F. Supp. 2d at 873.

An alien could demonstrate eligibility for interim relief by showing *prima facie* eligibility for a U Visa through evidentiary proof addressing the four criteria listed in 8 U.S.C. § 1101(a)(15) (U)(i)(I)-(IV). *Catholic Charities CYO*, 622 F. Supp. 2d at 873. Those criteria have been summarized by the Ninth Circuit in *Cisneros-Rodriguez* as follows: "An applicant for a U-visa must demonstrate that (1) she has suffered substantial physical or mental abuse in connection with a qualifying crime; (2) she possesses information concerning the crime; (3) she has been helpful, is being helpful, or is likely to be helpful to an official who is investigating or prosecuting the crime; and (4) the qualifying crime violated federal or state law." *Cisneros-Rodriguez*, 813 F.3d at 759 (citing 8 U.S.C. § 1101(a)(15)(U)(i)). A U Visa applicant also must obtain, as a prerequisite to the visa, "a law enforcement certification . . . stating that the alien 'has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of' such criminal activity. *Nsinano v. Sessions*, 236 F. Supp. 3d 1133, 1137 (C.D. Cal. 2017) (quoting 8 U.S.C. § 1184(p)(1)). Where the U Visa applicant was a child under the age of sixteen at the time of the qualifying crime, factors (2) and (3) may be satisfied if the alien's parent or guardian possesses information about the crime and assists in the investigation or prosecution of the crime. 8 U.S.C. § 1101(a)(15)(U).

Defendant argued in his motion to dismiss the indictment that he was the victim of a qualifying crime under the VTVPA – a 1997 assault on his family – and that he satisfied all the other requirements for a U Visa.  At the evidentiary hearing, both Defendant and two of his sisters testified about the assault, which occurred when Defendant was thirteen years old.  Defendant's extended family was at the home of one of Defendant's sisters, Maria Elena Velazquez, to celebrate the fifteenth birthday of another of his sisters, Angelica.  Gov't Exh. 5, Evid. Hrg. Tr. 81:7-19, ECF 109-2.  Several men pushed into the party carrying weapons, including a gun and a baseball bat.  *Id.* at 81:20-82:9.  Defendant saw one man point a gun at his father's face.  *Id.* 100:1- 7.  Defendant gathered his nephews, took them into a back room, and helped them climb out a window to the outside where he hid with them behind a tree.  *Id.* at 100:11-25.  Defendant heard a gunshot but he stayed behind the tree until his sister came to get him.  *Id.* at 100:24-101:3.  Defendant's brother-in-law was shot in the shoulder and his father was hit in the stomach with a hammer.  *Id.* 82:1-19; 85:1-2.

Defendant sought to introduce the testimony of an unlicensed marriage and family therapist intern, Augusta Del Zotto, to establish that he suffered the requisite "substantial mental abuse" from the 1997 incident, including Post-Traumatic Stress Disorder ("PTSD") and other mental issues.  Evid. Hrg. Tr. at 7:18-22.  Judge Whyte excluded Ms. Del Zotto's testimony on the ground that she was not sufficiently qualified to opine on Defendant's mental health.  *Id.* at 41:20-42:7.  Defendant then attempted to establish substantial mental abuse with his own testimony that he has trouble sleeping, suffers panic attacks, and had difficulty in school.  *Id.* at 101:20-102:25; 104:24-105:10.  However, in response to questioning by the Government's counsel, Defendant admitted that he has never been diagnosed with anxiety, PTSD, or a learning disability.  *Id.* at 109:14-110:19.

Defendant did not offer a witness on immigration procedures generally or U Visas specifically.  The Government presented the testimony of Michaelyn Potter, a supervisory immigration services officer in charge of immigration officials who adjudicate U Visas.  Evid. Hrg. Tr. 61:8-62:9.  Ms. Potter stated that in order to obtain a U Visa, an alien must satisfy all the criteria discussed above and also establish that he is admissible to the United States.  *Id.* 63:14-21.

She indicated that circumstances which would render an alien inadmissible included "entry without inspection, criminal grounds, health related grounds, immigration violations." *Id.* at 64:13-15. Ms. Potter opined that a conviction for either assault to commit rape or sex with a minor at least three years younger would render an alien inadmissible. *Id.* at 65:10-15. An inadmissible alien may seek a waiver of admissibility. *Id.* at 65:2-9. However, according to Ms. Potter, such waiver was not available to an alien applying for a U Visa – or more precisely, interim relief – prior to September 2007. *Id.* at 65:16-25. Beginning in 2007, an alien applying for a U Visa could seek a waiver of inadmissibility. *Id.* at 65:16-66:6. An alien who has been convicted of a violent crime must show extraordinary circumstances to obtain a waiver of inadmissibility. *Id.* at 66:16-23. Ms. Potter stated that she had never approved – and indeed had never heard of any official approving – a waiver of inadmissibility for a U Visa applicant convicted of assault to commit rape or sex with a minor at least three years younger. *Id.* at 68:11-69:24.

After the evidentiary hearing, Judge Whyte concluded that Defendant had not demonstrated that he had a plausible claim for a U Visa in 2006. Judge Whyte stated the following reasons for his decision: (1) Defendant had not established that he suffered substantial mental abuse as a result of the 1997 incident; (2) Defendant had not established that a law enforcement agency had certified or would certify that his parents provided substantial assistance to officers investigating or prosecuting the crime; (3) Ms. Potter testified that in 2006 a violent felony rendered an alien ineligible for a U Visa; and (4) Ms. Potter testified that although starting in 2007 an aggravated felony was not automatically disqualifying, she was not aware of a U Visa ever being issued to an individual who had been convicted of rape by force. Order Denying Motion to Dismiss at 7, ECF 53. Judge Whyte ultimately ruled that "although the Government has not shown by clear and convincing evidence that Valverde-Rumbo's waiver of his right to a hearing and to be represented by counsel was knowing, intelligent and voluntary, Valverde-Rumbo has not met his burden to show prejudice. Therefore, his motion to dismiss is denied." *Id.* at 7-8.

### D. Defendant's Proffer of New Evidence

Defendant identifies four pieces of evidence which he contends likely would change the

outcome of his motion to dismiss if Judge Whyte's ruling were reconsidered: (1) police reports regarding the 1997 incident; (2) court records regarding the prosecution for that incident; (3) a law enforcement certification recently issued with respect to the 1997 incident; and (4) a new expert declaration. The Court evaluates each piece of evidence under the *Harrington* test, set forth again here for the sake of convenience: "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *Harrington*, 410 F.3d at 601. The Court first determines which pieces of evidence satisfy prongs (1) through (4) of the test, and then determines whether that evidence cumulatively satisfies prong (5).

### 1. Police Reports

Defendant presents the police reports regarding the 1997 assault. *See* Def. Exh. A, Police Reports, ECF 98-1. Those reports were not presented to Judge Whyte when Defendant moved to dismiss the indictment because Defendant's counsel at the time, Gabriela Lopez, could not locate them. *See* Lopez Decl., Def. Exh. L, ECF 98-2; Def. Reply to Motion to Dismiss at 7 n.1, ECF 29. While the Government argues that Defendant could have located the reports in the exercise of due diligence, the Government does not direct the Court to any case holding that the diligence requirement for Rule 33 motions is particularly high. In *Harrington*, the court found that the defendant had not demonstrated "due diligence" because "[t]he photographs and street map could have been obtained at any time." *Harrington*, 410 F.3d at 601. In contrast, Defendant's counsel in the present case attempted to locate the police reports through more than one avenue, but was hampered by the fact that she did not have the correct spelling of the name of the primary suspect in the 1997 assault, Trinidad Richard Ontiveros. *See* Lopez Decl., Def. Exh. L, ECF 98-2; Def. Reply to Motion to Dismiss at 7 n.1, ECF 29. The investigator from the Federal Public Defender's Office who eventually located the police reports in January 2017 had some difficulty in doing so as a result of uncertainty regarding the spelling of Mr. Ontiveros' name. Romero Decl., Def. Exh. M, ECF 98-2. Other courts have found the diligence requirement to be satisfied

where the defendant searched for records but was unable to locate them due to confusion regarding the subject's name. *See United States v. Gordon*, 246 F. Supp. 522, 524-25 (D.D.C. 1965). The Court finds that the police reports constitute new evidence and that Defendant's failure to present the reports to Judge Whyte was not the result of lack of diligence.

The police reports are material to Defendant's motion for a new trial, because they contain information about the 1997 assault which Defendant contends rendered him eligible for a U Visa in 2006. However, except insofar as they show that Defendant's father was helpful to the police, which is discussed below, the reports are cumulative of the testimony given by Defendant and his sisters at the evidentiary hearing before Judge Whyte. Defendant argues that the police reports corroborate that the 1997 incident occurred and illustrate the traumatic nature of the event. On the latter point, the testimony offered at the evidentiary hearing provides far more detail regarding Defendant's experience than do the police reports, which do not even mention Defendant by name.

With respect to Defendant's corroboration argument, Judge Whyte never expressed any doubt that the 1997 assault occurred. To the contrary, it appears that he fully credited the testimony of Defendant and his sisters. Nor did Judge Whyte question whether Defendant was the victim of the assault, that is, whether Defendant was the victim of a qualifying crime for purposes of determining his eligibility for a U Visa.[3] Defendant cites case authority supporting Judge Whyte's apparent finding that Defendant was a victim of the assault based on Defendant's presence within the "zone of harm." *See People v. Trujillo*, 181 Cal. App. 4th 1344, 1355 (2010) (gunman who shot only at driver and was unaware that car also contained passenger could be charged with and convicted of assault against both driver and passenger because passenger was in the "zone of harm"). Evidence which merely corroborates facts already accepted by Judge Whyte adds nothing to the case.

Defendant's reliance on *United States v. Garland* for the proposition that corroborating evidence is material under Rule 33 is misplaced. In *Garland*, the new evidence corroborated a

---

[3] The gunman, Trinidad Richard Ontiveros, was charged with assault with a firearm in violation of California Penal Code § 245(A)(2), a felony. There is no dispute that assault with a firearm is a qualifying crime.

defense which the defendant had presented at trial and which had not been believed by the jury. *United States v. Garland*, 991 F.2d 328, 330 (6th Cir. 1993). The Court of Appeals held that under those circumstances the new evidence warranted a new trial. *Id.* Here, the police reports corroborate testimony which was fully credited.

The only non-cumulative aspect of the police reports is the information showing that Defendant's father cooperated with the police following the 1997 assault. As discussed above, prior to obtaining a U Visa an applicant must obtain a certification from a law enforcement agency "stating that the alien 'has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of' such criminal activity." *Nsinano*, 236 F. Supp. 3d at 1137 (quoting 8 U.S.C. § 1184(p)(1)). Where the U Visa applicant was a child under the age of sixteen at the time of the qualifying crime, it is sufficient that the applicant's parent or guardian assists in the investigation or prosecution of the crime. 8 U.S.C.A. § 1101(a)(15)(U). One of the bases for Judge Whyte's denial of Defendant's motion to dismiss the indictment was that Defendant failed to establish he could have obtained a law enforcement certification. Order Denying Motion to Dismiss at 7, ECF 53.

Because the police reports provide non-cumulative information supporting Defendant's assertion that he could have obtained a law enforcement certification in 2006, the Court will consider the police reports at prong (5) of the *Harrington* test.

### 2. Court Records

Defendant also presents court records relating to the prosecution of Trinidad Richard Ontiveros for the 1997 assault. *See* Def. Exhs. B-D, Court Records, ECF 98-1. Those records constitute the charging documents, the transcript of the preliminary hearing, the abstract of judgment, and the sentencing minute order. *Id.* It appears that Defendant's prior counsel, Ms. Lopez, failed to discover those records for the same reason she failed to discover the police report – she did not have the correct spelling of Mr. Ontiveros' name and hit dead ends when she attempted to obtain any records regarding the 1997 incident from the San Jose Police Department or the Hall of Justice. *See* Def. Exh. L, Lopez Decl., ECF 98-2. Given Ms. Lopez's declaration, as well as the declaration of the investigator who ultimately discovered the records, *see* Def. Exh.

M, Romero Decl., ECF 98-2, the Court concludes that Defendant has established that the court records are new and that Defendant's failure to present them to Judge Whyte was not attributable to a lack of diligence.

The records, and in particular the transcript of Mr. Ontiveros' preliminary hearing, are material to the issue of whether Defendant could have obtained a law enforcement certification in 2006 had he known to seek one. Both of Defendant's sisters stated at the evidentiary hearing before Judge Whyte that their parents had not testified in the prosecution of the 1997 assault. However, the transcript of the preliminary hearing shows that in fact Defendant's father did testify. *See* Def. Exh. C, Prelim. Hearing Tr. at 26:19-31:22, ECF 98-1. This evidence is not cumulative of any evidence which was presented to Judge Whyte.

The other court records, including the charging documents, also are material to the issue of whether Defendant was a victim of a qualifying crime. Because Judge Whyte apparently was satisfied that Defendant was a victim of the 1997 felony assault, this aspect of the court records is merely corroborative.

However, because the court records provide new information supporting Defendant's assertion that he could have obtained a law enforcement certification in 2006, the Court will consider the court records at prong (5) of the *Harrington* test.

### 3. Law Enforcement Certification

Defendant submits a law enforcement certification which he obtained in March 2017 from the Office of the District Attorney for the County of Santa Clara. *See* Def. Exhs. E-F, I-918 Application and Certification, ECF 98-2. In response, the Government submits evidence that the March 2017 certification was rescinded in April 2017. Gov't Exh. 15, Letter Rescinding Certification, ECF 109-3. The letter rescinding the certification states that the certification was issued based on the mistaken belief that a gun was pointed at Defendant during the 1997 incident. *Id.* Because the gun was pointed at Defendant's father, and not Defendant, the Office of the District Attorney now concludes that Defendant was not a victim or significant witness with respect to the 1997 assault. *Id.*

The Government argues that the rescission of the March 2017 law enforcement

certification is dispositive of Defendant's motion. Defendant argues that the rescission of the March 2017 certification was the result of inappropriate interference by the United States Attorneys' Office and should be disregarded. Defendant devotes several pages of his reply brief to that issue.

The March 2017 certification clearly is new evidence, and Defendant applied for the certification based in part on the recently obtained court records showing that his father testified against Mr. Ontiveros. *See* Def. Exh. E, Application for Certification, ECF 98-2. Accordingly, the certification satisfies the first two prongs of the *Harrington* test. Moreover, the certification is material, as it goes to the issue of whether Defendant could have obtained a law enforcement certification in 2006 based on his father's assistance in prosecuting Mr. Ontiveros. Had the certification not been rescinded, it clearly would constitute evidence supporting Defendant's assertion that he could have obtained a certification in 2006. Given that the certification has been rescinded, however, it is not clear what if any weight it may be given. The Court concludes that it need not resolve that issue because the police reports and court records provide equal or greater support for Defendant's assertion that he could have obtained a law enforcement certification in 2006. The Court therefore will not consider the 2017 law enforcement certification in determining whether Defendant has satisfied the final prong of the *Harrington* test.

### 4.    Expert Declaration

Defendant's final proffer of new evidence is the declaration of an immigration expert, Sara Coppin. *See* Def. Exh. G, Coppin Decl., ECF 98-2. Ms. Coppin is a lawyer specializing in immigration and nationality law. *Id.* ¶ 2. She has litigated approximately eighty removal cases and has represented approximately thirty U Visa applicants. *Id.* Ms. Coppin states her opinion "that at the time of his first removal from the United States in 2006, Mr. Valverde-Rumbo was plausibly eligible for U Nonimmigrant status ('U visa')." *Id.* ¶ 4. Ms. Coppin goes through all of the requirements for a U Visa, opining that: "[f]elonious assault" is a qualifying crime; Defendant "did suffer long term psychological harm" as a result of the 1997 assault; and the testimony of Defendant's father was sufficient to satisfy the helpfulness requirement, since Defendant was a minor when the 1997 crime occurred. *Id.* ¶¶ 5-9. Ms. Coppin also states that Defendant would

have been able to obtain a waiver of inadmissibility notwithstanding his criminal convictions. *Id.* ¶ 16. Finally, Ms. Coppin attacks the testimony which Ms. Potter, the Government's witness, presented at the evidentiary hearing before Judge Whyte. *Id.* ¶ 10.

Ms. Coppin's declaration is new evidence, as it was prepared just a few months ago in April 2017.[4] However, Defendant has made no showing why, in the exercise of ordinary diligence, he could not have presented expert opinion regarding immigration procedures, U Visas, and his eligibility for a U Visa in support of his motion to dismiss the indictment. Defendant's attorney at that time, Ms. Lopez, had a law practice "focused on immigration and criminal matters." Def. Exh. L, Lopez Decl. ¶ 1, ECF 98-2. Ms. Lopez certainly could have assisted Defendant in retaining an immigration expert to present all of the same information and opinions regarding U Visa applications in general and Defendant's eligibility in particular.

Defendant argues that Ms. Coppin's declaration is admissible because she relies on the newly discovered police reports, court records, and 2017 law enforcement certification. However, as discussed above, that evidence offers nothing that was not presented to Judge Whyte through the testimony of Defendant and his sisters, with the exception of information supporting Defendant's assertions that he was the victim of a qualifying crime and that his father assisted in the investigation and prosecution of that crime. Ms. Coppin's nine-page declaration devotes only a single paragraph to those issues. *See* Def. Exh. G, Coppin Decl. ¶ 8, ECF 98-2.

Much of the declaration consists of Ms. Coppin's opinions regarding facts and laws which were well-known to the Defendant at the time of the proceedings before Judge Whyte. Indeed, it appears that Defendant hopes to use Ms. Coppin's declaration to fill the void left by Judge Whyte's exclusion of the unqualified intern who was offered to provide opinion testimony regarding Defendant's mental suffering caused by the incident. Ms. Coppin, an attorney, is no better qualified to render such opinions than the previously excluded witness. Repackaging such facts and law into a new declaration does not create "new" evidence. *See United States v. Metro.*

---

[4] The Court presumes that Ms. Coppin's declaration was prepared in April 2017. It indicates only that it was "Executed this 18th Day of April at Grass Valley, California" with no year provided. Def. Exh. G, Coppin Decl., ECF 98-2.

United States District Court
Northern District of California

*St. Louis Sewer Dist.*, 440 F.3d 930, 935 (8th Cir. 2006) (holding in the context of a motion for new trial in a civil case under Federal Rule of Civil Procedure 59, new opinion based on facts previously known or accessible is not sufficient to warrant relief). The remainder of Ms. Coppin's declaration is devoted to refuting Ms. Potter's testimony and establishing that it was plausible that Defendant would have obtained a waiver of inadmissibility in spite of his prior convictions of aggravated felonies. These opinions and their factual bases also were known and available to Defendant prior to trial.

Defendant argues that a court may accept as "new" evidence an expert opinion based in part on previously-known facts. The cases cited by Defendant are distinguishable. In *United States v. Brown*, the district court granted a new trial based on new expert opinion that the defendant suffered from battered woman syndrome. While the defendant herself knew that she was a battered woman, she hid that fact from her attorney. *United States v. Brown*, 891 F. Supp. 1501, 1509-10 (D. Kansas 1995). The district court concluded that because it was a symptom of the syndrome for the defendant to conceal the physical abuse, neither the defendant nor the attorney could be faulted for failing to present expert opinion regarding battered woman syndrome during trial. *Id.*

In *United States v. Brodwin*, the Government's case against two pharmacists depended on the Government's theory that the pharmacists had conspired with a physician. After the pharmacists were convicted, they obtained new expert opinion that the physician was insane and thus incapable of entering into the alleged conspiracy. *United States v. Brodwin*, 292 F. Supp. 2d 484, 492-93 (S.D.N.Y. 2003). The district court indicated that it would be inclined to grant a new trial based upon the new evidence, rejecting the Government's argument that the pharmacists were not diligent in obtaining expert opinion regarding the physician's sanity at an earlier time in light of his erratic behavior. *Id.* at 494-95. The district court noted that the pharmacists would have faced formidable obstacles in obtaining a psychological evaluation of the physician and that any such efforts would have delayed trial. *Id.*

In both *Brown* and *Brodwin*, the obstacles preventing counsel from obtaining and presenting the new expert opinion at an earlier date were so significant that the Court concluded

19

that the diligence requirement of Rule 33 had been met even though in *Brown* the defendant herself knew she was the victim of abuse and in *Brodwin* the pharmacists knew that their co-defendant was acting erratically. In the present case, there were no such obstacles to Defendant's presentation of expert opinion of the kind now offered by Ms. Coppin.

Accordingly, the Court concludes that in the exercise of ordinary diligence Ms. Coppin's expert declaration, or one substantially similar, could have been presented to Judge Whyte in support of Defendant's motion to dismiss. The Court thus will not consider it determining whether Defendant has satisfied the final prong of the *Harrington* test.

### 5. Conclusion

Having determined that the police reports and court records satisfy prongs (1) through (4) of the *Harrington* test, the Court must determine whether that evidence satisfies prong (5), that is, whether it "indicate[s] that a new trial would probably result in acquittal." *Harrington*, 410 F.3d at 601. The answer clearly is no.

Defendant's motion to dismiss the indictment depended on his ability to show that he had a plausible claim for a U Visa – or more precisely, for interim relief – in 2006. In order to establish a plausible claim for interim relief in 2006, Defendant must make a plausible showing that he could have established *prima facie* eligibility for a U Visa in 2006 through proof that: (1) he had suffered substantial physical or mental abuse in connection with a qualifying crime; (2) he or his parent possessed information concerning the crime; (3) he or his parent had been helpful or was likely to be helpful to an official who is investigating or prosecuting the crime; and (4) the qualifying crime violated federal or state law. *See Catholic Charities CYO*, 622 F. Supp. 2d at 873; 8 U.S.C. § 1101(a)(15)(U)(i). Defendant also must show that he could have obtained a law enforcement certification in 2006. *Nsinano*, 236 F. Supp. 3d at 1137. And finally, Defendant must show that he could have obtained a waiver of inadmissibility. *See* Gov't Exh. 5, Evid. Hrg. Tr. 64:13-66:23, ECF 109-2.

Judge Whyte determined that Defendant had not established that he could have obtained a law enforcement certification in 2006. The Court concludes that the police reports and court records are sufficient to show that if Judge Whyte's ruling were revisited, Defendant could

establish that he probably would have obtained a law enforcement certification in 2006.

However, Judge Whyte also determined that Defendant had not established that he suffered substantial mental abuse as a result of the 1997 incident. As set forth above, proof of substantial physical or mental abuse resulting from the qualifying crime is a requirement for a U Visa or for interim relief based on a *prima facie* showing of eligibility for a U Visa. Moreover, Judge Whyte accepted Ms. Potter's testimony that in 2006 an aggravated felony rendered an alien inadmissible and that it was unlikely Defendant could have or would have obtained a waiver of inadmissibility in 2006 or 2007. The police reports and court records do not speak to these issues and under *Harrington* Ms. Coppin's declaration, which does, may not be considered.

Accordingly, Defendant's motion for a new trial is DENIED.

**E.      Parties' Other Arguments Regarding Defendant's Eligibility for a U Visa**

In addition to the matters discussed above, the parties have presented substantial argument regarding the proper interpretation of the guidance memoranda which governed the availability of interim relief in 2006 and the effect of Defendant's criminal convictions on his eligibility for interim relief and, ultimately, a U Visa. While the Court has spent a significant amount of time considering those issues, and greatly appreciated counsel's well-prepared and spirited discussion of them at the hearing, the only new evidence to which they relate is Ms. Coppin's declaration. Having determined that Ms. Coppin's declaration may not be considered under *Harrington*, the Court concludes that it would be inappropriate to address thorny issues relating to the declaration.

The question presented by Defendant's motion for a new trial is quite narrow: whether Defendant's proffered new evidence indicates that a new trial probably would result in acquittal. *Harrington*, 410 F.3d at 601 (emphasis added). The evidence which may be considered by the Court under *Harrington* – the police reports and court records – at most suggests that Defendant could have obtained a law enforcement certification in 2006 had he known to seek one. That evidence does not undermine Judge Whyte's conclusions that Defendant neither "established that he suffered substantial mental abuse as a result of the assault" nor demonstrated that he could have obtained a waiver of inadmissibility. Order Denying Motion to Dismiss at 7, ECF 53.

United States District Court
Northern District of California

**III. ORDER**

For the reasons discussed above,

(1)     Defendant's motion for a new trial is DENIED;

(2)     Defendant's motion for leave to take discovery is TERMINATED; and

(3)     Defendant's request for leave to request judicial notice is DENIED.

Dated:  September 6, 2017

_____
BETH LABSON FREEMAN
United States District Judge